IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07cr282-WKW |
| | ) | (WO) |
| PATRICK WAYNE DISMUKES | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Patrick Wayne Dismukes ("Dismukes"), was charged on December 5, 2007, in a superseding indictment with conspiracy to possess with intent to distribute methamphetamine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  On March 19, 2008, Dismukes filed a motion, premised upon the Fourth Amendment to the United States Constitution, to suppress all items seized as a result of a search of his person and the vehicle in which he was a passenger on April 22, 2006, in Millbrook, Alabama, in the Middle District of Alabama.  (Doc. # 197 at 1-2).  Claiming that the seizure and subsequent search were unsupported by probable cause or reasonable suspicion, Dismukes contends that all evidence seized should be suppressed.

On May 28, 2008, the Court held an evidentiary hearing on the suppression motion. For the reasons which follow, the Court concludes that the motion to suppress is due to be denied.

**FACTS**

The material facts are largely undisputed.  On April 22, 2006, while on patrol, Millbrook police officer Tippins encountered Brandon Williams ("Williams") walking down

Main Street in Millbrook, Alabama. Officer Tippins asked Williams whether he needed help. Williams told Tippins that his vehicle had run out of gas, and he would like a ride to get gas. Tippins took Williams to a residence on Main Street so that Williams could pick up a gas can and then get gas.

After leaving Williams at the residence, Tippins went to check on the disabled vehicle, primarily to ensure that it was not obstructing traffic. Tippins found the vehicle on the Alabama River Parkway, partially in the roadway, with a passenger in the front seat of the vehicle. Before approaching the vehicle, Tippins called the tag into dispatch to check the vehicle's registration. Dispatch advised Tippins that the tag did not match the description of the vehicle and that the tag was possibly stolen.

After receiving this information, Tippins cautiously approached the vehicle and asked the passenger to get out of car. Dismukes stepped out of the vehicle. Tippins asked Dismukes if he was armed, and Dismukes responded that he had few knives on him. For his safety, Tippins patted Dismukes down and found pocket knives and a glass pipe which appeared to be used to smoke drugs.[1]

Tippins arrested Dismukes for possession of drug paraphernalia and placed him in the back of the patrol car. Tippins then took steps to secure the vehicle. He called a towing company to impound it, and he conducted an inventory search of the vehicle. During the inventory search, on the front passenger-side floor board where Dismukes had been sitting,

---

[1] Tippins testified that the glass pipe had burn marks on the end.

Tippins found a small tool box-type container. When he opened the tool box, Tippins found small plastic bags containing a crystal-like substance and green plant material as well as a digital scale.

## DISCUSSION

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Absent probable cause, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). *See also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993).

For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted). In so doing, "the reviewing court must give due weight to the police officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). The reasonable suspicion required for a *Terry* stop is more than a hunch, and considering the totality of the circumstances, must be supported by some minimal level of objective justification that the

person engaged in unlawful conduct. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)*;

Diaz-Lizaraza,* 981 F.2d at 1221.

After encountering Williams walking down the road, Officer Tippins went to check

on the disabled vehicle and found it partially blocking the road.  As part of his routine

procedure, Tippins checked the tag number through dispatch which informed him that the

tag number did not match the description of the vehicle.  Tippins then initiated contact with

Dismukes based solely on his receipt of information from dispatch that the tag and vehicle

did not match.  While the facts do not support a conclusion that the vehicle was stolen, the

information that Tippins had, that the tag did not match the vehicle, was sufficient to give

rise to a reasonable suspicion that criminal activity may be afoot.  Neither Tippins' approach

of Dismukes nor his request that Dismukes exit the vehicle rendered Tippins' actions

unlawful. *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).[2]  Based on the objective facts, the

court concludes that the Tippins' initial contact with Dismukes did not violate the Fourth

Amendment.

When Tippins approached Dismukes, Tippins asked Dismukes if he had any weapons.

Once Dismukes responded that he was armed with a few knives, Tippins was entitled to

"take reasonable actions, based upon the circumstances, to protect [himself] during

---

[2]  In *Pennsylvania v. Mimms*, 434 U.S. 106 (1997), an officer directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed. The Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist. *Mimms,* 434 U.S. at 110-11.

investigative stops." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989).[3]

> It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 331 (1985). This includes conducting a protective search of the driver, *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (177), the passengers, *id.*, and the vehicle, *Michigan v. Long*, 463 U.S. 1032, 1049-51, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

*United States v. Purcell*, 236 F.3d 1274, 1277-78 (11th Cir. 2001).

When Tippins patted Dismukes down, he found the glass smoking pipe. At that juncture, Tippins' initial permissive encounter with Dismukes ripened into probable cause to arrest him for possession of drug paraphernalia.

After lawfully arresting Dismukes, Tippins testified that he followed standard procedure to secure and impound the vehicle. Williams, the driver of the vehicle, was not present as Tippins had taken him to a residence on Main Street. In addition, the vehicle was partially blocking the road. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

Tippins requested a tow truck and then conducted an inventory search. "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth

---

[3] During the suppression hearing, counsel for the defense argued that *Minnesota v. Dickerson*, 508 U.S. 366 (1993) required suppression of the glass pipe and other drug paraphernalia because Tippins did not believe the bulge he felt in Dismukes' pocket was a weapon. *Minnesota v. Dickerson, supra*, is inapposite because in *Dickerson,* the officer conducting the pat down knew before he conducted the search that the defendant did not have any weapons on him. In this case, Dismukes told Tippins that he had several knives on his person.

Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983).  Inventory searches "serve to protect an owner's property while it is in custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *Opperman,* 428 U.S. at 369-70; *Bertine*, 479 U.S. at 372. Consequently, automobile searches, "where the process is aimed at securing or protecting the car and its contents, " are permissible.   *Id*. 428 U.S. at 373.

Tippins testified that the purpose of the search was to secure the vehicle and, in accordance with standard protocol, inventory any personal property in the vehicle.  The search of the vehicle and the tool-box were permissible inventory searches as the purpose of the searches was to secure any personal property in the vehicle or tool-box.  *See Opperman*, *supra* (upholding search of glove compartment of vehicle); *Lafayette*, *supra* (upholding search of defendant's shoulder bag).[4]   Accordingly, the court concludes that Tippins' inventory searches of the vehicle and tool-box were reasonable and not violative of the Fourth Amendment.

---

[4]  The court notes that the search could also be justified as a search incident to an arrest.  The Supreme Court, in *New York v. Belton*, 453 U.S. 454 (1981), specifically held that

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.  If follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach.

*Id*. at 460.  *See also Florida v. Jimeno*, 500 U.S. 248, 251 (1991);  *U.S. v. Diaz-Lizaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993).

**CONCLUSION**

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **June 16, 2008.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of June, 2008.

                    /s/Charles S. Coody
                    CHARLES S. COODY
                    UNITED STATES MAGISTRATE JUDGE